# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**DARRELL L. JACKSON,**
 **Plaintiff,**

vs.           **Case No.: 5:09cv338/RH/MD**

**FLORIDA DEPARTMENT OF FINANCIAL**
**SERVICES, et al.,**
 **Defendants.**

_____

## ORDER

    Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a third amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 28). From a review of the amended complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named defendants. The court will therefore allow the plaintiff an opportunity to clarify his allegations in an amended complaint.

    Plaintiff is an inmate of the Florida penal system currently confined at the Reception and Medical Center in Lake Butler, Florida. (Doc. 23). He was confined at the Northwest Florida Reception Center ("NWFRC") in Chipley, Florida at the time of the events giving rise to this lawsuit. His third amended complaint names six defendants, all prison staff at NWFRC: Nurse 1, Nurse 2, Medical Director Paula Foskey, Lieutenant Cutchinson, Officer John Doe, and Major Willford. (Doc. 28, pp. 1-2).[1] Plaintiff claims one or more of the defendants violated his Eighth and Fourteenth Amendments on June 12, 2009, when they were deliberately indifferent to his serious medical needs, issued a disciplinary report against him, and used excessive force. In support of these claims, plaintiff alleges the

---

[1]References to page numbers are to those appearing on the third amended complaint, as opposed to the court's Electronic Filing System ("ECF").

following.

Prior to incarceration plaintiff sustained back and neck injuries in two car accidents. (Doc. 28, p. 5). These injuries were noted in his prison medical file. X-rays were taken on June 1, 2009 (while plaintiff was incarcerated), revealing "degenerated disks" in plaintiff's lower spine, "pinched nerves and scoliosis." (*Id*., p. 5). On June 12, 2009 plaintiff slipped and fell while working in the NWFRC kitchen. The fall caused plaintiff's back to "lock-up" and "enormous" pain. According to plaintiff, it was "impossible" for him to walk. (*Id*., p. 6). Plaintiff was taken by wheelchair to the medical department lobby, where Nurse 1 ordered him to walk into the Nurses' Station. After plaintiff told her he could not walk, she again ordered him to get up and walk into the Nurses' Station. After plaintiff again responded that he could not walk, Nurse 1 called Lt. Cutchinson and Officer Doe. When the officers arrived at the Nurses' Station, Lt. Cutchinson asked plaintiff why he could not get out of the wheelchair. (*Id.*, p. 10). Plaintiff responded that he had "a serious back problem," was "in an enormous amount of pain," and had had x-rays ten days earlier. (*Id*.). Nurse 1 informed Cutchinson and Doe that plaintiff "was faking." Lt. Cutchinson became "irate," began cursing at plaintiff and ordered another inmate to assist plaintiff into the Nurses' Station. (*Id*., p. 10). Once inside, Nurse 1 ordered plaintiff to step onto a scale. (*Id*., p. 6). When plaintiff reported that he could not, Cutchinson ordered the inmate to assist plaintiff. Once plaintiff was on the scale with his arm supported by the other inmate, Nurse 1 ordered the other inmate to let go. Once the inmate let go, plaintiff "fell almost to [his] knees," which caused "an enormous amount of pain to [his] back." (*Id*.). The near fall "aggravated" plaintiff's condition and worsened his back pain. (*Id*., p. 7). After the inmate helped plaintiff up, Nurse 1 lifted plaintiff's shirt, observed his back, and reported to Lt. Cutchinson, "I don't see no swelling. I told you he was faking." (*Id*., p. 7). Nurse 1 ordered plaintiff back to work and, when plaintiff responded he could not work, wrote plaintiff a disciplinary report for refusing to work. Lt. Cutchinson handcuffed plaintiff, and he and Officer Doe took plaintiff by the arms and dragged him out of the building. Plaintiff yelled for help as he was dragged. As Lt. Cutchinson and Officer Doe exited the building they were approached by Major Willford who had heard plaintiff yelling. Willford asked

*Case No: 5:09cv338/RH/MD*

what the problem was.  Lt. Cutchinson informed Willford that plaintiff had refused to work. Major Willford said "ok," and walked off.  (*Id*., p. 13).  Lt. Cutchinson and Officer Doe dragged plaintiff another 50 feet, then lifted him to his feet and assisted him as he walked the rest of the way to confinement.  Plaintiff alleges that being dragged caused injury to his back and shoulders.   As relief, he seeks monetary damages and injunctive relief.

In any section 1983 action the initial inquiry must focus on whether two essential elements are present:

> 1.  whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2.  whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

In the instant case, plaintiff seeks to hold two defendants liable on the basis of supervisory liability:  Medical Director Paula Foskey and Major Willford.  Plaintiff claims Director Foskey is liable for the nurses' deliberate indifference to his medical needs because Foskey:  (1) "has authority to set policy for the nursing staff;"  (2) "has given tacit authority to the nursing staff to deny inmates medical care based on their unprofessional medical judgments," and (3) has failed to adequately train, supervise and direct nursing staff.  (Doc. 28, p. 9)  Plaintiff also seeks to hold Director Foskey liable because she failed to intervene after plaintiff "advised her of his injuries."  (*Id*.).  Plaintiff seeks to hold Major Willford liable for "fail[ing] to act or intervene" in Cutchinson's and Doe's use of excessive force, alleging that plaintiff's cries for help put Willford on notice that the officers were "abusing" him.  (*Id*., p. 13).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Cottone v. Jenne,* 326 F.3d 1352 (11th Cir. 2003).

"The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008) set forth the limited circumstances in which a causal connection between the actions of a supervising official and the alleged constitutional deprivation can be shown sufficient to render him liable on a § 1983 claim. The causal connection can be established

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

Here, plaintiff does not allege Director Foskey personally participated in the alleged denial of medical care. Although he states Foskey "g[ave] tacit authority to the nursing staff to deny inmates medical care based on their unprofessional medical judgments," such a conclusory allegation is insufficient to establish a causal connection. Plaintiff alleges no specific facts to support a finding that Director Foskey authorized nurses to make "unprofessional" medical judgments or judgments beyond their scope of practice. Nor does plaintiff make out a colorable claim that the nurses' conduct in this case was the product of a lack of training. Unless plaintiff can show, by stating specific facts, that an action of Director Foskey caused the deprivation of his constitutional rights, he should remove this defendant from his amended complaint.

As to Major Willford, plaintiff's sole allegations against this defendant are that he saw Lt. Cutchinson and Officer Doe dragging plaintiff, heard plaintiff yelling for help, asked Lt. Cutchinson what the problem was, and did nothing after Cutchinson reported that

plaintiff had refused to return to work.  Plaintiff seeks to hold Major Willford liable on the theory that he "failed to act and intervene and stop his subordinates from abusing [plaintiff] and violating [plaintiff's] constitutional rights.  (Doc. 28, p. 13).  Plaintiff further contends Willford "neglected his duty as a supervisory official with deliberate indifference."  (*Id*).  Plaintiff's allegations do not state a plausible § 1983 claim against Major Willford.  A failure to stop claim under a theory of supervisory liability requires that the supervisor:  "(1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it."  *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010) (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (requiring allegations of a "causal connection between actions of the supervising official and the alleged constitutional violation")).  In the instant case, plaintiff's allegations fail to suggest Major Willford knew Lt. Cutchinson and Officer Doe were "abusing" plaintiff or violating his constitutional rights.  According to plaintiff, all Major Willford knew was that: (1) plaintiff was being dragged to confinement because he had refused to return to work, and (2)  plaintiff was yelling for help.  That does not suggest Willford knew Cutchinson and Doe were using excessive force or wantonly inflicting pain on plaintiff.  Dragging a recalcitrant inmate who refuses to return to work (or walk) does not violate the Constitution.[2]  To the contrary, based on plaintiff's allegations, Willford could plausibly have

---

[2] "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).  In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008); *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).  In addition, the court must give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance."  *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

*Case No: 5:09cv338/RH/MD*

thought Cutchinson's and Doe's force to be necessary to maintain or restore discipline.

In amending, plaintiff must completely fill out a new civil rights complaint form, marking it "**Fourth Amended Complaint.**"  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the "Statement of Facts," plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint.  In the section entitled "Statement of Claim," plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Plaintiff should file the amended complaint with an original signature with the court and keep an identical copy for himself.  Plaintiff should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint.  The court will notify plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment.  Furthermore, plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.  Finally, plaintiff is advised that discovery is premature at this stage of the case and plaintiff should not do any discovery without leave of court.

Accordingly, it is ORDERED:

1. The clerk of court shall forward to the plaintiff a civil rights complaint form for use in actions under 42 U.S.C. §1983.  This case number should be written on the form.

*Case No: 5:09cv338/RH/MD*

Case 5:09-cv-00338-RH -MD   Document 31   Filed 06/09/10   Page 7 of 7

*Page 7 of 7*

2.  The plaintiff shall have **twenty-eight (28) days** from the date of this order in which to file an amended civil rights complaint, which shall be typed or clearly written and submitted on court form as instructed above. Failure to submit an amended complaint as instructed will result in a recommendation that this case be dismissed.

DONE AND ORDERED this 9th day of June, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**