**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**DARRELL L. JACKSON,**
      **Plaintiff,**

**vs.**                         **Case No: 5:09cv338/RH/MD**

**LT. R. K. Cutchins, et al.,**
      **Defendants.**

---

**ORDER and
REPORT AND RECOMMENDATION**

      This cause is before the court upon plaintiff's fourth amended civil rights complaint filed under 42 U.S.C. § 1983. (Doc. 33). Plaintiff, who is proceeding *pro se*, was granted leave to proceed *in forma pauperis* without being required to pay an initial partial filing fee. (Doc. 10). Upon review of the fourth amended complaint, the court concludes that several of plaintiff's claims should be dismissed.

**BACKGROUND**

      Plaintiff is an inmate of the Florida penal system currently confined at Everglades Correctional Institution. He was confined at Northwest Florida Reception Center ("NWFRC") at the time of the events giving rise to his complaint. His fourth amended complaint names seven defendants, all prison officials at NWFRC: Lt. R. K. Cutchins, Officer John Doe, Major Willford, Nurse H. Fromm, Nurse 2, Paula Foskey and Officer C. Cain. (Doc. 33, pp. 1-2).[1] Plaintiff claims the defendants violated his Eighth and Fourteenth Amendment rights on June 12, 2009, when one

---

[1]References to page numbers are to plaintiff's handwritten page numbers appearing on the fourth amended complaint, as opposed to the court's Electronic Case Filing System ("ECF").

or more of the defendants were deliberately indifferent to his serious medical needs, used excessive force on him, and issued him a "bogus" disciplinary report ("DR"). Plaintiff further claims that issuance of the DR violated a provision of the Florida Administrative Code. As relief, plaintiff seeks injunctive relief relating to the DR, compensatory damages, punitive damages, and any other relief to which he may be entitled.

## DISCUSSION

Since plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all the factual allegations in the complaint as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

In order to state a claim under section 1983, a plaintiff must establish two essential elements:

> 1.  the conduct complained of was committed by a person acting under color of state law; and
>
> 2.  this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

The allegations of plaintiff's fourth amended complaint are as follows. Prior to plaintiff's incarceration in 2008, plaintiff sustained neck and back injuries in two separate car accidents. While incarcerated, plaintiff obtained copies of his medical records from outside medical providers and had those records placed in his prison medical file. On June 1, 2009, x-rays of plaintiff's back were taken at his institution. According to plaintiff, those x-rays revealed that he suffers from degenerated disks in his lower spine, pinched nerves, and scoliosis. (Doc. 33, p. 5).

On June 12, 2009, plaintiff slipped and fell while working in the prison kitchen. As a result his back "locked up," causing him "acute pain" and making it "impossible" for him to walk. (*Id.*, p. 6). Plaintiff was taken by wheelchair to the lobby of the medical building. Upon his arrival defendant Nurse Fromm directed him to get out of the wheelchair and walk inside the Nurses' Station. Plaintiff responded that he could not walk. Nurse Fromm told plaintiff that she was giving him an order to get up and walk into the Nurses' Station. After plaintiff again responded that he could not walk, Nurse Fromm called defendants Lt. Cutchins and Officer Doe. (*Id.*).

When Cutchins and Doe arrived, Nurse Fromm advised them that plaintiff refused to get out of the wheelchair and was "faking." (*Id.*, pp. 6, 13). Lt. Cutchins asked plaintiff why he could not get out of the wheelchair. Plaintiff informed Cutchins that he has "a serious back problem," that he was in "an enormous amount of pain," and that he recently had x-rays taken. (*Id.*, p. 13). Cutchins ordered an

inmate to assist plaintiff out of the wheelchair and into the Nurses' Station.  Nurse Fromm ordered plaintiff to stand on the scale.  When plaintiff responded, "I can't," Lt. Cutchins ordered the inmate to assist plaintiff.  (*Id.*, p. 6)  Once plaintiff was on the scale, Nurse Fromm ordered the inmate to step away.  When he did, plaintiff "fell almost to [his] knees causing acute pain to [his] back."  (*Id.*).  The inmate helped plaintiff to his feet.  Nurse Fromm lifted plaintiff's shirt, viewed his back and announced, "I don't see no swelling.  I told you he was faking."  Fromm ordered plaintiff back to work.  When plaintiff responded, "I can't work," Fromm told Lt. Cutchins to lock plaintiff up for refusing to work.  (*Id.*, p. 7).  Nurse Fromm did not allow plaintiff to see a doctor.  (*Id.*).

Cutchins and Doe took plaintiff by the arms and dragged him out of the medical building.  (*Id.*, pp. 13, 14).  Defendant Cain was the security officer stationed in the lobby of the medical building at the time of the foregoing events.  She was sitting in the Officer's Station at the entrance of the building and, according to plaintiff, saw and heard everything that occurred in the lobby, including plaintiff's entrance, the exchange before plaintiff entered the Nurses' Station, and plaintiff's exit.  (*Id.*, p. 10).  She also heard everything that went on inside the Nurses' Station due to a door being open.  After plaintiff left, Nurse Fromm allegedly "conspired" with Officer Cain and "had her write a bogus DR."  (*Id.*, p. 7).  Plaintiff does not describe the nature of the DR or the punishment imposed, but attached a copy of the DR to his original complaint. (Doc. 1).[2]  The DR establishes that plaintiff was issued a DR for refusing to work, that he was found guilty of the infraction (pursuant to his plea of no contest) on June 23, 2009, and that he was punished for the infraction by forfeiting 18 days of gain time and spending 60 days in disciplinary confinement.

---

[2]In determining whether an amended complaint should be dismissed for failure to state a claim upon which relief can be granted, a court may rely on documents attached to the original complaint.  *See, e.g., Gross v. White*, 340 Fed. Appx. 527, 534 (11th Cir. July 17, 2009) ("A district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint."); *see also Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (stating that a court may consider "the pleadings and exhibits attached thereto" when ruling on a motion to dismiss).

(Doc. 1, Attach. p. 16 in ECF).   While in confinement plaintiff received several additional DRs, which resulted in additional time in confinement.  (*Id.*, Attach., pp. 17-35 in ECF)

Plaintiff states that while Cutchins and Doe were dragging him to confinement, they encountered defendant Major Willford.  Plaintiff had been yelling for help, and Willford asked what the problem was.  (*Id.*, p. 17).  Plaintiff responded, "I hurt my back in the kitchen," but before plaintiff could explain further, Lt. Cutchins interrupted and told Willford plaintiff refused to return to work.  Willford said "okay," and walked off.  (*Id.*, p. 18).  After dragging plaintiff approximately 50 feet, Cutchins and Doe lifted plaintiff to his feet and plaintiff walked, supported by Cutchins and Doe, to G-dorm confinement where he was placed in a confinement cell.  (*Id.*, p. 14).  Once in confinement, Cutchins authorized the "bogus" DR written by Officer Cain.  (*Id.*).

## Claims Necessarily Implying the Invalidity of Plaintiff's June 23, 2009 Disciplinary Conviction

Plaintiff claims the defendants violated his constitutional rights and state law (Rule 33-602.101(15) of the Florida Administrative Code), when they issued the "bogus" DR on June 12, 2009, charging him with refusing to work, which led to his conviction on June 23, 2009.  According to plaintiff, as a result of this "bogus" DR he "suffered loss of liberty for 420 days, loss of property," and was exposed to excessive force and deliberate indifference while in disciplinary confinement.  (Doc. 33, p. 7).  He seeks damages for the "wrongful confinement," as well as the following injunctive relief:  "retraction" of that DR and all subsequent DRs issued to plaintiff after he arrived at confinement, expungement of the June 23, 2009 disciplinary conviction, restoration of all gain time taken from plaintiff since his confinement on June 12, 2009, and "to credit plaintiff all lost gaintime lost since he has been in confinement (10 days a month from 6-12-09)."  (Doc. 33, p. 21 in ECF).

As discussed earlier, the attachments to plaintiff's original complaint establish that the June 23, 2009 disciplinary conviction for plaintiff's June 12, 2009 refusal to

work resulted in the elimination of 18 days of gain time. (Doc. 1, Attach., p. 16 in ECF). In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court ruled that habeas corpus is the exclusive remedy for all prisoner claims – including claims ostensibly brought as requests for damages or injunctive relief and not for speedier release – that "call into question the lawfulness of conviction or confinement." *Heck,* 512 U.S. at 482-83; 114 S.Ct. at 2370. The Court stated that an action under § 1983 that by its nature challenges the lawfulness of a conviction or sentence is not cognizable unless and until the sentence or conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck* at 487, 114 S.Ct. at 2372; *see also Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Absent such an invalidation, the § 1983 suit must be dismissed.[3]

Here, plaintiff's claims involving issuance of the DR (i.e., that it was "bogus"; that Fromm, Cain and Cutchins conspired to issue the "bogus" DR; that it violated his right to be free from the use of excessive force;[4] that it violated his right to due process;[5] and that one or more of the defendants failed to intervene in the wrongful

---

[3]Moreover, the injunctive relief plaintiff seeks (restoration of the forfeited gain time and credit for "lost" gain time) is in the nature of habeas corpus. The Supreme Court stated in *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973), that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." Regardless of the label plaintiff may place on the action, any challenge to the fact or duration of a prisoner's confinement is properly treated as a habeas corpus claim. *Prather v. Norman*, 901 F.2d 915, 918-19 n.4 (11th Cir. 1990) (per curiam); *McKinnis v. Mosley*, 693 F.2d 1054, 1057 (11th Cir. 1982). Additionally, 28 U.S.C. § 2254(b) requires that before a federal court may consider a petition for writ of habeas corpus, a state prisoner must first present to the state courts for consideration each issue upon which the petitioner seeks review in federal court. *Rose v. Lundy*, 455 U.S. 509 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978). Thus, in order to challenge the June 23, 2009 disciplinary conviction, plaintiff must file a separate federal habeas corpus petition, but only after first exhausting his state court remedies.

[4]Plaintiff claims that "[b]y H. Fromm telling Lt. Cutchins to 'lock his ass up for refusing to work' she violated my 8th Amend. U.S. Constitution (Excessive Force)." (Doc. 33, p. 7).

[5]This claim is not expressly asserted, but liberally construed from plaintiff's allegations.

issuance of the DR) necessarily imply the invalidity of the disciplinary conviction that resulted in the loss of gain time and correspondingly plaintiff's prison sentence. Therefore, such § 1983 claims cannot proceed until plaintiff has had that disciplinary conviction reversed, expunged, or otherwise negated. Plaintiff indicates, by the injunctive relief he seeks, that that has not occurred.

Because plaintiff's § 1983 claims involving the DR for refusing to work necessarily imply the invalidity of the June 23, 2009 disciplinary action that deprived plaintiff of gain time credits, he cannot pursue those claims under § 1983. Therefore, those claims must be dismissed without prejudice.

Plaintiff's state law claim that the defendants violated Florida Administrative Code Rule 33-602.101(15) when they issued him the DR must also be dismissed, as no such state law exists.

## Claims Arising After Plaintiff Was Taken To Confinement

Plaintiff discusses a series of alleged unconstitutional acts that occurred after he entered confinement, including deprivation of his property, issuance of additional DRs that further deprived him of his liberty, "abuse" and the use of excessive force by a cell extraction team and other officers, and deliberate indifference to his medical needs by confinement staff. Plaintiff seeks to hold the named defendants liable for the conduct of these other unnamed and unidentified officers on the theory that had he not been in confinement, none of the other constitutional violations would have occurred. Plaintiff's allegations of causation are far too attenuated to state a plausible § 1983 claim against the named defendants for these alleged constitutional violations. *See Martínez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (holding that state officials could not be held liable for the death of a private citizen at the hands of a parolee because the causal connection between the decision to release the parolee from prison and the murder was too attenuated to establish a deprivation of constitutional rights under Section 1983); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the

alleged constitutional deprivation."); *see also, e.g., Holt v. Glenn*, 361 Fed. Appx. 75, 77 (11th Cir. Jan. 14, 2010) (affirming dismissal of inmate's § 1983 claim against probation officer for deprivation of inmate's liberty upon revocation of his parole: "The district court correctly found that [the inmate's] complaint failed to show a causal connection between [the officer's] act – the alleged alteration of the order of probation – and the alleged deprivation of [the inmate's] liberty interest – the revocation of his probation. . . . [The officer's] act of amending the probation order to reflect a nine-year period of probation rather than a three-year period did not result in the revocation of the probation. Accordingly, because [the officer's] actions did not cause [the inmate] to be deprived of his liberty interest, [the inmate] has failed to state a claim for relief."); *Quintanilla v. Bell*, No. 9:08cv172, 2009 WL 175526, at *7 (E.D. Tex. Na. 23, 2009) (dismissing prisoner's § 1983 claims against parole board chairman for injuries sustained when prisoner slipped in prison shower, asserted on the theory that "had he been paroled, he would not have fallen in the shower"; the causal connection between the decision not to parole the prisoner and the prisoner's fall in the shower was too remote). Therefore, plaintiff's claims against the defendants for alleged constitutional violations that occurred at the hands of other officers after plaintiff was taken to confinement should be dismissed.

<u>Claims Against Defendant Foskey</u>

Plaintiff asserts § 1983 claims defendant Paula Foskey in her official capacity as Medical Director of NWFRC. (Doc. 33, p. 1). He seeks to hold her liable, on a theory of supervisory liability, for the alleged inadequate medical care provided by Nurse Fromm on June 12, 2009.[6] (*Id.*, pp. 11-12). Assuming, without deciding, that plaintiff properly exhausted his claims against Foskey, the allegations of his fourth amended complaint fail to state a plausible Eighth Amendment claim against her.

---

[6]Plaintiff also asserts Eighth and Fourteenth Amendment claims against Foskey for the deprivation of his liberty and property while in confinement, the injuries he suffered as a result of a cell extraction team's use of excessive force while in confinement, and the various other officers' disregard of plaintiff's medical needs while in confinement. (Doc. 33, pp. 11-13). These claims, as well as plaintiff's state law claim, are addressed in the previous sections.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008) set forth the limited circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim. The causal connection can be established:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

In the instant case, plaintiff alleges Foskey established a custom or policy whereby inmates appearing at the medical building and complaining of back injuries are ordered to get out of the wheelchair, walk into the Nurses' Station and stand on the scale; if they comply, they are sent back to their dormitories without further medical attention or treatment. (Doc. 33, p. 12). Plaintiff states this happened to him once before, in March of 2009. On that occasion plaintiff declared a medical

emergency due to back pain and was taken by wheelchair to the medical building. The nurse (one Nurse Reed) ordered him to get out of the wheelchair and stand on the scale. An inmate assisted plaintiff into the Nurses' Station and onto the scale. Nurse Reed told the inmate to let go, and plaintiff stood on the scale without assistance. Nurse Reed then advised plaintiff that if he could stand on the scale there was nothing wrong with him, and sent him back to his dorm without medical treatment. (*Id.*, p. 5). Plaintiff asserts other inmates have reported the same experience. (*Id.*, p. 12).

Plaintiff asserts the foregoing custom was the "moving force" behind the inadequate medical care he received on June 12, 2009. (*Id.*). However, even assuming such a custom or policy existed, plaintiff's allegations do not reasonably support an inference that defendant Fromm's denial of medical care on June 12, 2009 resulted from her application of that custom. Contrary to the alleged custom, plaintiff states he was sent away without medical treatment on June 12, 2009 after he as <u>unable</u> to stand on the scale and was then <u>examined by Nurse Fromm for signs of swelling</u>. Thus, even assuming plaintiff's allegations are true, they fail to establish a plausible causal connection between defendant Foskey's alleged custom or policy and the alleged constitutional violation. Because plaintiff's fourth amended complaint fails to sufficiently allege violation of the Eighth Amendment by defendant Foskey under a theory of supervisory liability, plaintiff's claims against her should be dismissed.

<u>Claims Against Defendant Cain</u>

Aside from plaintiff's claim against defendant Officer Cain arising from her issuance of the June 12, 2009 DR, plaintiff seeks to hold Officer Cain liable for Nurse Fromm's alleged denial of medical care, and Cutchins and Doe's alleged use of excessive force, on the theory that Cain "refused to act and intervene" in the alleged unconstitutional conduct. (Doc. 33, pp. 10-11). In support of his complaint, plaintiff alleges Officer Cain was the security officer stationed in the Officers' Station of the

medical building during the incident in question, and that she heard and observed everything that transpired during plaintiff's visit.

Assuming, without deciding, that plaintiff properly exhausted his failure to intervene claims against Cain, the allegations of his fourth amended complaint fail to state a claim for relief that is plausible on its face. If a prison official, whether supervisory or not, refuses to intervene or fails to take reasonable steps to protect the victim when a constitutional violation takes place in her presence, the official is directly liable under section 1983. *See Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007); *Ensley v. Soper*, 142 F.3d, 1402, 1407 (11th Cir. 1998). But it is also true that this liability arises only if the non-intervening official is in a position to intervene and fails to do so. *Priester v. City of Rivera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *Ensley*, 142 F.3d at 1407 ("[F]or an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene[.]"); *see also Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requires the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct").

In the instant case, even taking plaintiff's allegations as true and construing them in the light most favorable to him, they fail to suggest that Cain, a security officer, had the authority or medical expertise to contravene a medical professional's evaluation or orders. Thus, it is unreasonable to infer that Cain was in a position to stop Fromm's conduct or insist that plaintiff see a doctor. Further, even assuming Cain was in a position to intervene, no reasonable juror could infer that Cain knew of and disregarded a substantial risk of serious harm by conduct that is more than gross negligence, given the medical professional's assessment that plaintiff was "faking" and the absence of evidence that Cain must have known Nurse Fromm had grossly misjudged plaintiff's condition. This is so even though plantiff says Officer Cain heard plaintiff say he was in pain and could not walk.

As to Cain's failure to intervene in Cutchins and Does' use of force, in light of this court's conclusion, *infra*, that the allegations of plaintiff's complaint do not state an Eighth Amendment excessive force claim that is plausible on its face, plaintiff cannot maintain a failure to intervene claim based on Cutchins and Doe's conduct. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (holding that because officer who applied force did not violate arrestee's right to be free from excessive force, the non-intervening officer had no attendant obligation to intervene).

Claims Against Defendants Cutchins and Doe

Plaintiff asserts a number of claims against defendants Cutchins and Doe. He claims these defendants were deliberately indifferent to his serious medical needs and/or failed to intervene in defendant Nurse Fromm's unconstitutional denial of medical care. (Doc. 33, pp. 13-17). He further claims these defendants used excessive force when they dragged him to confinement.

To prove his complaint of medical deliberate indifference and failure to intervene, plaintiff's allegations must raise a reasonable inference that plaintiff had a serious medical need, that Cutchins and Doe were deliberately indifferent to that need, and that plaintiff's injury was caused by these officers' deliberate indifference. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). To prove that the officers were deliberately indifferent, plaintiff must allege facts from which a reasonable inference can be drawn of the officers' "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

To support his claim, plaintiff alleges that Cutchins and Doe saw plaintiff sitting in the wheelchair in the lobby, observed the interaction between plaintiff and Nurse Fromm including Fromm's declaration that plaintiff was "faking," and heard plaintiff's statement that he had a "serious back problem" and was in "an enormous amount of pain." (Doc. 33, p. 13). Plaintiff faults Cutchins for ordering plaintiff to

walk with assistance into the Nurses' Station. But given the conflicting information Cutchins was given – a medical professional's statement that plaintiff refused to get out of the wheelchair and was faking, and plaintiff's statement that he had "a serious back problem" and was in pain – no reasonable juror could infer that at the time Cutchins ordered plaintiff to walk <u>with assistance</u> the short distance from the lobby into the Nurses' Station, Cutchins knew of and disregarded a substantial risk of serious harm by conduct that is more than gross negligence.

Further, plaintiff faults Cutchins and Doe for their alleged knowledge that plaintiff received no medical treatment for his injury and pain. (*Id.*, pp. 15, 17).[7] But plaintiff's allegations establish that both defendants knew a medical professional, Nurse Fromm, had seen, spoken with, and visually examined plaintiff and determined he was "faking." Thus, even taking the allegations of plaintiff's fourth amended complaint as true and construing all reasonable inferences in his favor, he has failed to state a plausible claim that Cutchins and Doe knew of and disregarded a substantial risk of serious harm by conduct that is more than gross negligence. *See Townsend v. Jefferson County*, 601 F.3d 1152, 1158-59 (11th Cir. 2010) (holding that deputies were not deliberately indifferent to pre-trial detainee's serous medical need where the evidence showed the deputies informed a nurse about the detainee's complaints and the deputies knew the nurse had visited the detainee, determined her condition did not require immediate medical treatment, and advised that she could wait several hours for further evaluation); *cf. Goebert*, 510 F.3d at 1329; *Harris v. Coweta County*, 21 F.3d 388, 392-93 (11th Cir. 1994); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988). Although plaintiff asserts that "[a]ny lay person should know that a nurse is not qualified to diagnos[e] a spinal injury especial[l]y without running a series of tests and looking first into the person's medical file," (doc. 33, pp. 14, 16), a reasonable jury could <u>not</u> find, from the circumstances plaintiff has

---

[7]Although plaintiff claims Cutchins and Doe "refus[ed] to allow [plaintiff] to be seen by a physician," (doc. 33, pp. 15, 17), his allegations state that it was Nurse Fromm, not Cutchins or Doe, who ordered plaintiff to leave the medical department without seeing a physician.

described (*i.e.*, plaintiff's declarations of pain and injury), that the two officers must have known Nurse Fromm had grossly misjudged plaintiff's condition. *See Townsend, supra* (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Thus, plaintiff's complaint of medical deliberate indifference and failure to intervene against Cutchins and Doe should be dismissed.

Plaintiff further claims Cutchins and Doe used excessive force when, after Nurse Fromm examined plaintiff's back and declared him "faking" for the second time, the officers grabbed plaintiff by his arms and dragged him to confinement even though, according to plaintiff, "at no point was I disorderly, disruptive or resistant." (Doc. 33, pp. 14, 16). Plaintiff says this caused "acute pain" to his back and shoulders. (*Id.*).

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. As to the objective component, "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, — U.S. —, 130 S. Ct. 1175, 1178 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not]

maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson*, 503 U.S. at 7–8; *see also Whitley*, 475 U.S. at 321; *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (quoting *Johnson*, 481 F.2d at 1033). Although the absence of serious injury is relevant to an excessive force claim, the core judicial inquiry is not whether a quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 130 S. Ct. at 1178–79; *see also Hudson*, 503 U.S. at 4. Additionally, under Eleventh Circuit law, in cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. *Skrtich*, 280 F.3d. at 1302.

That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. *Campbell*, 169 F.3d at 1376 (citation omitted). Thus, as summarized in *Campbell*, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five *Hudson/Whitley* factors outlined above, by deference to prison officials' punitive

judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.*

The Court in *Whitley* narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322 (emphasis added).

In the instant case, the officers plausibly could have thought some type of force was necessary to remove plaintiff from the medical building and get him to confinement. Although plaintiff posed no physical threat to the safety of the officers, the officers could reasonably have perceived plaintiff as refusing to comply with an order, and dragging him was not disproportionate to the amount of force necessary to restore discipline, gain plaintiff's compliance and accomplish their task. Again, a reasonable jury could <u>not</u> find that the two officers must have known Nurse Fromm had grossly misjudged plaintiff's condition. In light of all of the foregoing, plaintiff's claims against defendants Cutchins and Doe should be dismissed.

<u>Claims Against Defendant Willford</u>

Plaintiff claims that defendant Major Willford violated his right to be free from excessive force when Willford failed to stop Cutchins and Doe when he observed them dragging plaintiff to confinement. "A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." *Keating*, 598 F.3d at 765; s*ee Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (requiring only allegations of a "causal connection between actions of the supervising official and the alleged constitutional

violation"). Here, because plaintiff's allegations fail to state a plausible excessive force claim arising from Cutchins and Doe dragging him, his allegations correspondingly fail to state a failure to stop claim against Major Willford.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect the following seven defendants in this action, as the court has already done in the caption of this order: Lt. R. K. Cutchins, Officer John Doe, Major Willford, Nurse H. Fromm, Nurse 2, Paula Foskey and Officer C. Cain

And it is respectfully RECOMMENDED:

1. That plaintiff's § 1983 claims involving the June 23, 2009 disciplinary conviction for refusing to work be DISMISSED WITHOUT PREJUDICE.

2. That plaintiff's state law claims under "Chapter 33-602.101(15)" be DISMISSED WITH PREJUDICE.

3. That plaintiff's § 1983 claims against the defendants for alleged constitutional deprivations occurring after defendants Cutchins and Doe placed plaintiff in confinement on June 12, 2009 (*e.g.*, additional deprivation of plaintiff's liberty, deprivation of property, "abuse"/excessive force, medical deliberate indifference) be DISMISSED WITH PREJUDICE.

4. That all of plaintiff's claims against defendants Foskey, Cain, Cutchins, Doe and Willford be DISMISSED WITH PREJUDICE.

5. That this matter be referred to the assigned magistrate judge for further proceedings (including the filing of an amended complaint) on plaintiff's surviving claims against defendants Nurse Fromm and Nurse 2.[8]

At Pensacola, Florida, this 11th day of February, 2011.

*/s/ Elizabeth M. Timothy*
ELIZABETH M. TIMOTHY
UNITED STATES MAGISTRATE JUDGE

---

[8]The only surviving claims are those against Nurse Fromm for medical deliberate indifference and the claim against Nurse 2 for her failure to intervene in Fromm's unconstitutional conduct.

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**